## PADEN v. HUDSON.
### No. 2515.

Court of Civil Appeals of Texas. El Paso.
March 26, 1931.

Rehearing Granted April 23, 1931.

Knollenberg & Cameron, of El Paso, for plaintiff in error.

R. B. Rawlins, of El Paso, for defendant in error.

WALTHALL, J.

In this case L. Hudson, a proposed purchaser of land, sued J. B. Paden, a real estate agent or broker, to recover the sum of $500 earnest money advanced and paid by Hudson under the terms of a contract between Hudson, as purchaser of real estate, and M. C. O'Hara and, Mrs. Alda C. O'Hara, the sellers of the real estate.

Plaintiff's petition represents that he entered into a purchase contract with Paden acting as agent for the O'Hara farm located in Dona Ana county, N. M., and deposited with Padeñ the sum of $500 as earnest money and evidence of good faith in the purchase of said farm, that Paden was acting as agent for the owner, Mrs. M. C. O'Hara, and that said earnest money was to be applied on the purchase price of said farm. The petition alleged failure of the title, in that the O'Haras could. not convey a part of the contracted lands, the title being in other parties not parties to the purchase contract sued upon; the petition alleges a demand and refusal of Paden to return the earnest money paid.

Paden pleaded general denial; specially denied any indebtedness to Hudson; that in all the transactions with Hudson he was acting as the agent of O'Hara; and that any money he received of Hudson was received as such agent. Further answering, Paden pleads the written purchase-money contract for the sale of said land entered into between Hudson and M. C. and Àlda S. O'Hara, and the provisions of said contract.

The case was tried to the court without a jury. The court made findings of fact and conclusions of law, as follows:

"I find that sometime in the early part of September, 1929, Mr. H. M. Walker, an employee of the defendant, J. B. Paden, carried

the plaintiff, T. L. Hudson, to Dona Ana County, New Mexico, and showed him a farm which the defendant had listed for sale consisting of 198 acres, more or less, belonging to one, O'Hara; and I find that after some further negotiations, on the 23 day of September, 1929, the following contract was entered into:

"Paden

"Phone 1700

"Realty Company.

"308 Texas st.                    El Paso, Texas.
"Earnest Money Receipt and Contract of Sale.

"El Paso, Texas, Sept. 23, 1929.
"Received of T. L. Hudson, the sum of $500.00 (Five Hundred and no/100 Dollars), earnest and part purchase money to bind this contract of sale to himself of the following described property: 198 acres, more or less, known as the O'Hara farm, about five miles West of Las Cruces. For the total price of ($27,500.00) Twenty seven Thousand Five Hundred Dollars, on the following terms: ($5000.00) Five Thousand and No/100 Dollars cash, including the earnest money, upon delivery of the Deed and the balance as follows: For which the purchaser is to execute his vendor's lien notes, bearing interest from date thereof at the rate of 8% per annum, notes payable as follows: $2000.00 per year for five years, balance the fifth year. Commission to be 3¾%.

"Deed to be made to T. L. Hudson or order and to be General Warranty. All water assessments, taxes, paving liens, rents and insurance to be pro rated to date of sale and all taxes prior to the year of sale to be paid by seller. An abstract of Title or Guarantee Title to be furnished by the seller at his expense showing him to have a good, merchantable title to the above property, or title to be made so; if title of said property be found defective, ninety days additional time shall be given the owner or agents to perfect same; if title cannot be made merchantable, all money shall be refunded. On the other hand, it is hereby agreed that if the purchaser shall fail or refuse to complete his part of his contract according to its terms and conditions, then the purchaser shall forfeit the earnest money to the seller and the forfeiture of said earnest money by the purchaser under this contract shall not in anywise limit, impair or defeat the right of the seller to pursue and enforce this contract and to seek and recover further damages on account of such failure. The usual agreed commission shall be paid by the seller to the agents effecting this sale, and in any and all event, and the earnest money shall be applied upon payment thereof. All deferred payments shall be secured by deed of trust and the vendor's lien retained in this Deed.

"This contract is made subject to approval of owner and the deal shall be closed as soon as possible.
"I accept the foregoing contract:
                    "M. C. O'Hara,
                    "Mrs. Alda S. O'Hara,
                        "Seller.
                    "T. L. Hudson,
                        "Purchaser."

"I find that in the month of December, 1929, the plaintiff was informed by Fred C. Knollenberg, an attorney of El Paso, that he would have to take what the witness termed a 'minor's deed' to a part of the land described in the earnest money receipt.

"I find that he thereupon returned to defendant's office to ascertain what the trouble was and that one, Wells, an employee of the defendant, took him to Dona Ana County, New Mexico and introduced him to Mr. and Mrs. O'Hara and that Mr. and Mrs. O'Hara carried him out and showed him over the 198 acres described in all the pleadings herein, as the O'Hara farm.

"I find that near the center of the O'Hara farm was nine acres of land, the title of which was vested in a minor named Freudenthal.

"I find that Charles O'Hara, a son of Mr. and Mrs. O'Hara, had title to 20 acres of said land.

"I find that by actual measurement that there was 212 acres of land in tract,

"And I find that there was a failure of title as to the two tracts mentioned above.

"I find that plaintiff was able and willing to complete the purchase of said land had the O'Haras been able to deliver to him a good and merchantable title, and that he would have done so.

"I find that Walker and Wells, the employees of defendant knew nothing about the title of the land nor the lines and the location of the land except such information as they could learn from maps and from information furnished them by the O'Haras, and that there is no evidence of bad faith in any manner whatsoever in their dealing with the plaintiff herein.

"Conclusion of Law.

"I conclude, as a matter of law, that while the defendant, J. B. Paden, has done all that is necessary for a real estate man to earn his commission, that there is nothing in the contract or earnest money receipt of September 23, 1929, that gives him a lien or any right upon the $500.00 mentioned in said contract, which I find to be the same $500.00 involved in this controversy, and I, therefore render a judgment for plaintiff for that amount.
                    "J. M. Deaver, Judge."

On the above findings, the court entered judgment for Hudson that he recover of

Paden the sum of $500, from which Paden prosecutes this appeal.

### Opinion.

■ The question presented here is as to the judgment that should have been rendered by the trial court on the facts found. Plaintiff pleaded that the purchase contract he entered into was with Paden, but the contract sued on, and the only contract found in the record, is one signed by the O'Haras, as sellér, and accepted by Hudson as purchaser. The O'Hara-Hudson contract provides that, if the title is found defective, and cannot be made merchantable, all money shall be refunded. It furthér provides that "the usual agreed commission shall be paid by the seller to the agents effecting this sale, and in any and all events, and the earnest money shall be applied upon payment thereof." It seems to us that only one construction can properly be put on that contract, viz. that on failure of title the seller must refund to Hudson the money paid, and that the earnest money paid must be paid by the seller to Paden, the agent of the seller, in discharge of the commission.

The plaintiff's petition in connection with the court's findings shows that plaintiff, the purchaser, was ready, able, and willing to complete the purchase, and that Paden, as agent, had brought the seller and purchaser together in a written purchase contract of sale, so that by so doing the agent had earned his commission, which both seller and purchaser recognized in the contract, and agreed that the earnest money should be applied upon payment of the commission. The court found that there was no evidence of bad faith in the transaction—the O'Haras just could not convey a merchantable title. The trial court seems to have concluded that, as there was nothing in the earnest-money contract that gave Paden a lien or right to the $500, judgment should be for Hudson and against Paden. The question of the agent's lien on the earnest money paid does not arise, we think, out of the contract or from the facts found. The parties were dealing with a known principal, and the contract here was made between the purchaser and the principal. There is no statement in the contract that the earnest money was paid to Paden by Hudson. It is only by an inference in Paden's answer that he received the earnest money from Hudson, and alleges that he paid the $500 to O'Hara, and in the written contract O'Hara acknowledged the receipt of the money from Hudson. But, conceding that Hudson paid the earnest money to Paden, there is no provision in the earnest-money contract to the effect that the $500 deposit was to be retained by Paden and returned to Hudson by him, in the event of failure of title, but, as appears from the contract, a directly opposite disposition was by Hudson and O'Hara agreed to be made of the earnest-money deposit.

The law is well settled that an agent standing in the position of a stakeholder, or escrow depository, receives money to be paid over on the happening of a contingency or the performance of certain conditions, and makes payment to the principal under such conditions he would be liable to the party found to be entitled to receive the money. It is not claimed here that such condition was made to appear by parol. The trial court made no such finding. The earnest-money contract contains no such obligation. In fact, there is no contract, parol or in writing, in the record between Hudson and Paden. Under Hudson's counter proposition 4, it is said: "The court found that the $500.00 was given to Paden, defendant below." And that: "there is no evidence that the money was turned over to O'Hara." And under counter proposition 5 it is said: "The court found, in substance, that Paden had Hudson's money."

The statement of facts is not brought up, and we do not know what the evidence shows.

We have found no finding to the effect stated in the record either in the court's finding or in the judgment. The trial court simply transcribed the written contract between O'Hara and Hudson, and made it a part of the court's finding, but made no finding that Paden was given the money, or that Paden had Hudson's money.

■ However, we think it immaterial whether Paden received the money from Hudson and retained it, or whether he turned it over to O'Hara, and subsequently received it from O'Hara. The first words of the written contract between O'Hara and Hudson acknowledge that O'Hara had received of Hudson the $500, and we presume that the money was given to Paden, but we must presume also, in the absence of any other showing, that it was given to him by O'Hara under the terms of the contract. Hudson, suing on the contract, makes no other contention. Paden's liability to Hudson must be determined by the contract sued on. There is not the slightest suggestion in the record of any agreement, understanding, or contract between Hudson and Paden as to the receipt of, or disposition to be made of, the money deposit. All that we find in the record as to the receipt of, or disposition to be made of, the money deposit, is in the contract between O'Hara and Hudson, in which the receipt of the money by O'Hara is acknowledged, and in the contract O'Hara and Hudson contract with each other with respect to its receipt and disposition, and in which they agreed as above stated. Paden is not a party to the contract.

We have concluded that the court was in error in entering judgment.

The case is reversed, and judgment is here rendered in favor of Paden, appellant.

### On Rehearing.

**PELPHREY, C. J.**

We are of the opinion that, instead of our rendering judgment, the cause should be reversed and remanded for retrial.

There is no statement of facts in the record, and we think the case has probably not been fully developed, and, in the exercise of the discretion vested in such cases, the cause will be remanded. This is permissible, even though an amendment to the pleadings may be necessary in the lower court.

We are still of the opinion that upon the record here presented the judgment of the lower court must be reversed for the reasons stated in the original opinion.